[NOT FOR PUBLICATION] [Docket Nos. 87 & 91]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| JEFFREY JOHNSON,<br><br>         Plaintiff,<br><br>         v.<br><br>NEW JERSEY DEPARTMENT OF<br>CORRECTIONS, et al.,<br><br>         Defendants. | Civil No. 11-5764 (RMB/JS)<br><br>**OPINION** |

Appearances:

Lisa J. Rodriguez, Esquire
Schnader Harrison Segal & Lewis LLP
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1165
     Attorney for Plaintiff

Alex J. Zowin, AAG
State of New Jersey
Office of the Attorney General
Hughes Justice Complex
25 Market Street
Trenton, New Jersey 08611
     Attorney for Defendants

**BUMB,** United States District Judge:

     Plaintiff Jeffrey Johnson ("Plaintiff") was incarcerated at South Woods State Prison ("SWSP") in Bridgeton, New Jersey. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that he was assaulted by two correctional officers at SWSP, Defendants Philip Sheppard and Werner Zaak (collectively

"Defendants").¹ Specifically, Plaintiff alleges that following a court trip, Defendants physically assaulted him while he was restrained in handcuffs and shackles as he exited the transportation van at SWSP. Second Amended Complaint, ¶¶ 14-16 [Docket No. 12]. In his Second Amended Complaint, Plaintiff alleges he sustained lacerations to his face and scalp, as well as several bruises and abrasions on his arms, legs, torso, face, and head. Id. at ¶ 17. Plaintiff seeks compensatory and

---

¹ The Court notes that Plaintiff has also named New Jersey Department of Corrections Commissioner Gary M. Lanigan ("Lanigan") as a defendant in his Second Amended Complaint. However, the record reflects that Lanigan has never been served in this action, let alone within 120 days of the filing of Plaintiff's complaint as required by Federal Rule of Civil Procedure 4(m). Under Rule 4(m), "if a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant" unless the plaintiff shows "good cause" for the failure. "While the Marshals Service's failure to effectuate service on behalf of an in forma pauperis plaintiff may constitute 'good cause' within the meaning of Rule 4(m), the plaintiff must take 'reasonable steps . . . to identify for the court the defendants named in the complaint.'" Novak v. Posten Taxi Inc., 386 F. App'x 276, n. 1 (3d Cir. 2010) (quoting Rance v. Rocksolid Granit USA, Inc., 583 F.3d 1284, 1286-87 (11th Cir. 2009)). Over three years have passed since Plaintiff filed his Second Amended Complaint and since the Marshal's Service served Defendants Sheppard and Werner. Plaintiff has since made no efforts to have the Marshal's Service serve Lanigan, despite frequent contact with the Court and the appointment of pro bono counsel, and as such the Court presumes he has abandoned any claims asserted against Lanigan in this action. "[A]n in forma pauperis plaintiff 'may not remain silent and do nothing to effectuate such service.'" Frierson v. St. Francis Med. Ctr., No. 07-3857, 2012 WL 1677134, at *3 (D.N.J. May 14, 2012) aff'd, 525 F. App'x 87 (3d Cir. 2013) (quoting Rance, 583 F.3d at 1288 n. 3).

punitive damages, injunctive relief, and expungement of the disciplinary charges and vacation of the sanctions imposed upon him as a result of the incident.

Defendants move for summary judgment as to all counts, contending: (1) Plaintiff's claim of excessive force would impermissibly undermine his prison disciplinary sanction pursuant to Heck v. Humphrey; (2) Plaintiff has failed to establish that he has met the verbal threshold to bring his tort claims of assault and battery and negligence; and (3) Defendants are protected from liability under qualified immunity. For the reasons set forth in this Opinion, Defendants' motion for summary judgment will be denied.[2]

I.  **STATEMENT OF FACTS**

On November 10, 2010, Plaintiff and three other inmates were picked up at Yardville Prison for a return to SWSP. They were placed on Central Transport Vehicle #235 ("CTV #235") under the supervision of Central Transportation Officer Enrique Ramos, the bus driver, and Central Transportation Officer Philip Sheppard ("Defendant Sheppard").

According to Plaintiff, once he was on the bus, there was a verbal exchange between him and Defendant Sheppard that began

---

[2] Plaintiff has submitted a Motion to Seal [Docket No. 91] in conjunction with his opposition papers. Because Plaintiff has satisfied this Court that the motion meets the requirements of Local Civil Rule 5.3, that motion is GRANTED.

3

when Plaintiff asked that the air conditioner be turned down because he was cold.  See Plaintiff's Statement of Disputed Facts at ¶ 1 ("Plaintiff's Statement") [Docket No. 92-3].  Defendant Sheppard refused and threatened Plaintiff.  Id.

When they arrived at SWSP, before entering the inmate unload sally port area, CTV #235 pulled over and Defendant Sheppard exited the bus.  Plaintiff's Statement at ¶ 3.  He returned a few moments later with Central Transportation Officer Werner Zaak ("Defendant Zaak"), and shined his flashlight into Plaintiff's face in an effort to identify the Plaintiff.  Id. at ¶ 3.  The bus entered the sally port, and Defendant Sheppard directed Plaintiff, who was in both hand and leg shackles, to leave the bus.  Id. at ¶¶ 4, 11.  Defendant Sheppard then instructed Plaintiff to give his name to the officer controlling the intake booth.  While Plaintiff stood at the intake window alone, Defendant Sheppard entered SWSP and pulled a blue curtain around the inmate strip search area so that it was not viewable from either the intake window or the rest of the holding cell area.  Id. at ¶ 7.

Defendant Sheppard then called Plaintiff through the intake door and told him to sit down.  Id. at ¶ 8.  Defendant Sheppard at first led Plaintiff to believe he was going to unlock his leg shackles.  Rather than freeing his legs, Plaintiff alleges Defendant Sheppard went behind him and hit him in the back of

4

his head with an unknown object.  Id.  He then walked in front of Plaintiff and began punching him in the face.  Id. at ¶ 9.

Plaintiff avers that because he believed there were cameras outside the curtained area, he stood up and, with shackled legs and arms, ran through the curtains so that the beating would be captured on camera.  Id. at ¶ 10.  Defendant Sheppard attempted to pull him back into the curtained area, but Plaintiff successfully ran through the curtain into an open area.  Id.  It was at this point that Officer Timothy Hickman claims he called a Code 33.  Id. at ¶ 6.  Defendant Zaak waited outside while Defendant Sheppard took Plaintiff behind the curtain.  Hickman informed him that there was a scuffle between Plaintiff and Defendant Sheppard.  Id. at ¶ 6.  Defendant Zaak then entered SWSP and also began assaulting Plaintiff.  Second Amended Complaint at ¶¶ 15-16.  Other SWSP corrections officers arrived and Plaintiff was first placed in a holding cell before being taken for medical treatment.

As a result of the above incident, Plaintiff was charged with and found guilty of two counts of *.002 (assaulting any person) and one count of *.306 (conduct which disrupts or interferes with the security or orderly running of the correctional facility).  Plaintiff filed an administrative appeal of this disciplinary action, and the findings of the hearing officer were upheld.

5

## II. LEGAL STANDARD

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id.

When deciding the existence of a genuine issue of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n. 2 (3d Cir. 1983).  However, "[t]he mere existence of a scintilla of evidence," without more, will not give rise to a genuine issue for trial. Anderson, 477 U.S. at 252.  In the face of such evidence, summary judgment is still appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . ." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide.'" Williams v. Borough of West

6

Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (quoting Anderson, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995).

### III. **ANALYSIS**

Relying on Heck v. Humphrey, 512 U.S. 477 (1994), Defendants argue that summary judgment must be granted because Plaintiff was found guilty of two disciplinary charges arising from the incident, as set forth above. Defendants' argument is without merit. In Heck, the United States Supreme Court held

7

that a Section 1983 plaintiff may not recover for an unconstitutional conviction if doing so would necessarily imply the invalidity of a final conviction.  512 U.S. at 487.  In Heck, the plaintiff sued prosecutors and investigators under Section 1983 for his alleged unconstitutional conviction for manslaughter that, according to him, was the result of an unlawful investigation and arrest.  In effect, the plaintiff was seeking to use Section 1983 as an end run to avoid his conviction.  The Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

Id. at 486-87.  Since the plaintiff's manslaughter conviction was not reversed, his Section 1983 claim was necessarily barred.  The Court made clear, however, that this bar only applies when "a judgment in favor of the plaintiff would <u>necessarily imply the invalidity of his conviction or sentence</u>."  Id. at 487 (emphasis added).

That is not the situation presented here.³ Disciplinary proceedings were brought against Plaintiff as a result of a prison disturbance. The actions of Defendants were not considered in that disciplinary proceeding. The result of that disciplinary proceeding was that Plaintiff was found guilty of assault and conduct that disrupts or interferes with the security of the jail. A favorable outcome in this litigation would not necessarily invalidate or call into question the validity of the disciplinary conviction. Although the facts and issues overlap given that they arise from the same incident, "that overlap would not speak to the propriety of the hearing officer's procedures or attack the legitimacy of the hearing officer's legal determination." Lassiter v. Sherrer, No. 09-2979, 2011 WL 4594203, at *7 (D.N.J. Sept. 30, 2011).

In Concepcion v. Morton, 125 F. Supp. 2d 111, 123 (D.N.J. 2000), rev'd on other grounds, 306 F.3d 1347 (3d Cir. 2002), the district court allowed the inmates' Section 1983 action for excessive force to proceed, notwithstanding the existence of prior administrative assault findings against the prisoners. The court cautioned only that it could "not consider evidence

---

³ In fact, Plaintiff concedes that he is not, through this litigation, seeking a determination that he was wrongly convicted of the internal disciplinary charges, or that the procedures used in those hearings were improper, both of which would be barred under Heck v. Humphries.

that implies that the disciplinary punishments imposed against the plaintiffs are invalid." Id. at 123.  "[A]ny facts used as a basis for plaintiffs' excessive force claims cannot contradict the disciplinary proceedings arising from this same incident[.]" Id.

More recently, in a case with facts similar to those presented here, the plaintiff filed a Section 1983 excessive force claim, alleging that the defendant correction officers assaulted him while he was still handcuffed.  Lassiter, 2011 WL 4594203.  At an earlier disciplinary hearing arising from the same events, the plaintiff inmate was found guilty of assaulting the defendant correction officers.  The defendants moved to dismiss the civil litigation arguing, inter alia, that the court could not consider facts or evidence that contradict the disciplinary proceedings.  Id. at *6.  Applying the Concepcion rationale, the district court held that the Concepcion decision should not be read as an absolute bar to claims for excessive force "because as a practical matter, procedure would trump substance to the detriment of critical constitutional safeguards."  Id. at *7.  "The Supreme Court never held that parties are collaterally estopped from contesting prison disciplinary findings, but rather that a section 1983 claim cannot be pursued if it would 'necessarily imply' that the earlier determination process was invalid."  Id.  As a result,

10

the Court held that a favorable outcome of plaintiff's lawsuit for excessive force "would not invalidate or draw into question the validity of the disciplinary hearing." Id.  Rather, "[t]o the extent that the issues in this case would overlap with facts that were relevant in the disciplinary hearing, that overlap would not speak to the propriety of the hearing officer's procedures or attack the legitimacy of the hearing officer's legal determination." Id.

That same rationale applies here.  Plaintiff alleges that Defendants used excessive force and, in fact, physically assaulted him when they returned to the prison after a court appearance.  If Plaintiff prevails in his claims, and establishes that the Defendants used excessive force, such decision "would not speak to the propriety of the hearing officer's procedures or attack the legitimacy of the hearing officer's legal determination." Id.

Furthermore, the Third Circuit has made clear that Heck does not create a per se bar to a claim for excessive force: "Heck does not automatically bar a § 1983 claim for excessive force against an officer even though the plaintiff was convicted of resisting arrest (or, as here, simple assault) based on the same interaction with police." Suarez v. City of Bayonne, 566 F. App'x 181, 184-85 (3d Cir. 2014) (citing Nelson v. Jashurek, 109 F.3d 142, 145-46 (3d Cir. 1997)); Garrison v. Porch, 376 F.

11

App'x 274, 278 (3d Cir. 2010); Lora-Pena v. F.B.I., 529 F.3d 503, 506 (3d Cir. 2008). In Suarez, the Third Circuit reversed the district court's grant of summary judgment, holding that a jury could find that the defendant officer "continued to beat [plaintiff] beyond the point necessary to secure him after his brief resistance . . . without undermining [plaintiff's] assault conviction." 566 F. App'x at 185. See also Sharif v. Picone, 740 F.3d 263, 269-70 (3d Cir. 2014) ("Regardless of whether he engaged in assaultive conduct, [plaintiff] remains free to contend that the reaction of the corrections officers was such that it constituted excessive force in comparison to the threat he posed."). "[T]he mere fact of a conviction for assault or similar conviction arising out of the same incident does not automatically preclude recovery on an excessive force claim brought under § 1983." Garrison, 376 F. App'x at 278. Accordingly, Defendants' motion for summary judgment on this ground is denied.

Defendants have also moved for summary judgment on the grounds that Plaintiff has failed to establish that excessive force was used against him. The Court disagrees. The Eighth Amendment, which prohibits the "unnecessary and wanton infliction of pain," governs claims by an inmate against a prison official for the use of excessive force. Whitley v. Alberts, 475 U.S. 312, 319 (1986); Brooks v. Kyler, 204 F.3d

12

102, 106 (3d Cir. 2000).  The principal inquiry in an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Brooks, 204 F.3d at 106 (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).  Courts look to several factors to determine whether the facts support a plaintiff's Eighth Amendment excessive force claim.  Those factors include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.  Id. (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

    Here, Plaintiff avers that he was handcuffed at the time Defendant Sheppard assaulted him.  And, although Defendant Sheppard provides a different recollection of events and testified that Plaintiff assaulted him once the handcuffs were removed, those facts are genuinely disputed.  Notably, the evidence demonstrates that most of the other officers cannot support Defendant Sheppard's recollection of events and, in reports prepared immediately following the incident, most stated

that they were unsure if Plaintiff was handcuffed at the time of the assault.

To be sure, Plaintiff will not be permitted to introduce any facts that contradict the disciplinary proceedings, e.g., he did not assault an officer.[4] However, the Court finds that Plaintiff has presented sufficient evidence that Defendants used excessive force against him to defeat summary judgment.

Defendants also argue that summary judgment is appropriate because Plaintiff fails to meet the verbal threshold requirements of the New Jersey Tort Claim Act. N.J.S.A. § 59:1-1, et. seq. (the "Act"). The Act, however, explicitly exempts from its coverage certain acts committed by a public employee. In particular, N.J.S.A. § 59:3-14 states:

> a. Nothing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.
>
> b. Nothing in this act shall exonerate a public employee from the full measure of recovery applicable to a person in the private sector if it is established that his conduct was outside the scope of his

---

[4] The parties will be required to flesh out this issue in greater detail prior to trial so that the Court may make its evidentiary rulings. As it stands now the record is unclear as to what evidence the hearing officer considered in finding Plaintiff guilty of assault. In any event, as set forth above, a jury's finding that Defendants used excessive force would not necessarily invalidate a hearing officer's finding that Plaintiff assaulted the officer. See Lora-Pena, 529 F.3d at 506.

14

> employment or <u>constituted a crime, actual fraud, actual malice or willful misconduct</u>.

(emphasis added). Willful misconduct occurs when there is "a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences." <u>Leany v. Jersey City Bd. of Educ.</u>, 198 N.J. 557, 584 (2009). "Stated another way, the public employee must know the act is wrong, but he need not actually intend to harm the plaintiff." <u>Brown v. Arrayo</u>, No. 08-2661, 2012 WL 4506550, at *6 (D.N.J. Sept. 28, 2012).

Whether or not a particular act of an employee constitutes willful misconduct is a question for the trier of fact. <u>Costello v. City of Brigantine</u>, No. 99-4072, 2001 WL 732402, at *23 (D.N.J. June 28, 2001). <u>See</u> <u>also</u> <u>Brown</u>, 2012 WL 4506550, at *7 (plaintiff's testimony that he was beat without provocation and lost consciousness is sufficient evidence of willful conduct to create a question of fact for the jury). Defendants do not dispute this proposition and appear to concede that this is a jury question. Accordingly, Defendants' motion for summary judgment on this ground is denied.

Finally, Defendants argue that they are entitled to qualified immunity because the violation alleged by Plaintiff was not clearly established at the time Defendants acted. This argument clearly fails.

"Qualified immunity protects government officials from liability for civil damages where their performance of discretionary functions 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Giudice v. Cnty. of Atl., No. 07-1143, 2008 WL 4934040, at *4 (D.N.J. Nov. 13, 2008) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Such immunity is not available if the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [person] affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights[.]" Wood v. Strickland, 420 U.S. 308, 322 (1975).  A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Giudice, 2008 WL 4934040, at *4 (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)) (refusing to grant summary judgment on basis of qualified immunity where there exists genuine issue of material fact as to whether defendants acted maliciously and sadistically in violation of the Eighth Amendment).  It is clearly established that officers may not use gratuitous force against an inmate who is subdued.  Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) (denying summary judgment on ground of qualified

immunity because genuine issue of material fact existed as to whether inmate was resisting when officers kicked him); Bethune v. Cnty. of Cape May, No. 08-5738, 2011 WL 2037627, at *3 (D.N.J. May 20, 2011).  Here, as it is genuinely disputed whether Plaintiff was handcuffed at the time of the incident and thus whether the force used against Plaintiff by Defendants was "gratuitous," summary judgment on the basis of qualified immunity shall be denied.

Finally, Defendants argue that Plaintiff's claim for punitive damages should be dismissed because their actions did not rise to the level of malice or disregard of the Plaintiff's rights.  The Court reserves on this aspect, pending trial on the merits.

**IV. CONCLUSION**

For the foregoing reasons, Defendants motion for summary judgment is denied.

                                   s/Renée Marie Bumb
                                   RENÉE MARIE BUMB
                                   UNITED STATES DISTRICT JUDGE
Dated: September 23, 2015